AO 91 (Rev. 11/11) Criminal Complaint

AUSA: Kenton C. Weikener Telephone: (313) 269-4796
Special Agent: Elizabeth Weitzel (OIG) Telephone: (313) 505-7304

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

United States of America
v.
Stephanie Steen

Case No.

Case: 2:26−mj−30604
Assigned To : Unassigned
Assign. Date : 9/28/2026
Description: RE: STEPHANIE STEEN (EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 30, 2026 in the county of Wayne in the Eastern District of Michigan, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1001(a)(2) | False Statements or Representation to an Agency of the United States. |

This criminal complaint is based on these facts:
see attached affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Elizabeth Weitzel, Special Agent (DOL-OIG)
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

[signature]
*Judge's signature*

Date: September 28, 2026

City and state: Ann Arbor, Michigan

Hon. David R. Grand, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Elizabeth Weitzel, being duly sworn, hereby depose and state as follows:

**EXECUTIVE SUMMARY**

1. I make this affidavit in support of a criminal complaint and arrest warrant for STEPHANIE CAROL STEEN for violation of 18 U.S.C. § 1001(a)(2): False Statement or Representation to an Agency of the United States.

2. On March 5, 2025, law enforcement agents executed a search warrant on Turner Street in Detroit at approximately 4:00 A.M. As detailed below, the occupants of the house had already received notice of the search warrant's execution by phone and text message from STEEN, who was working as a dispatcher for Detroit Police and Fire. In a subsequent interview on January 30, 2026, she lied to federal agents, denying that she knew about the search warrant during the relevant time. She also denied that a sign-on name which viewed the relevant call for police dispatch services—STEENS121—belonged to her, when in fact it did.

**INTRODUCTION**

3. I am a Special Agent with the U.S. Department of Labor, Office of Inspector General, Office of Investigations- Labor Racketeering and Fraud (DOL-OIG/OI-LRF) and have been so employed since May of 2021. Prior to this assignment, I was a Special Agent with the U.S. Department of Housing and Urban

Development Office of Inspector General (HUD OIG) for over 11 years. I am currently assigned to the Federal Bureau of Investigation (FBI) Public Corruption squad in the Detroit Division and the FBI Detroit Fraud & Financial Crimes Task Force (DFFACT). I have conducted numerous criminal fraud investigations involving identity theft, public corruption, employee misconduct, and financial and unemployment fraud schemes. I was previously assigned to the Southeast Michigan Financial Crimes Task Force. I have conducted and/or assisted with numerous searches and arrest warrants related to these violations. I have additional experience and training from the Federal Law Enforcement Training Center regarding criminal activity, economic crimes, and identity theft.

4. Prior to my employment with HUD OIG, I was a Corporate Investigator and Bank Officer from July of 2006 until March of 2010. I investigated cases involving mortgage fraud, wire fraud, consumer loan fraud, counterfeit check fraud, identity theft, embezzlement, bank robberies and various financial institution fraud.

5. As a Special Agent with DOL OIG, I have conducted numerous investigations into criminal violations of both Title 29 and Title 18 of the United States Code. During this time, I have been either the lead agent or supporting agent on several investigations involving criminal schemes targeting the unemployment insurance ("UI") program through the filing of false or fictitious UI claims.

6. The facts set forth in this affidavit come from my personal observations, my training and experience, and information obtained from investigative sources, records, and information relayed from other members of the investigative team. This affidavit is submitted for the limited purpose of showing that there is enough probable cause that STEPHANIE CAROL STEEN has violated 18 U.S.C. § 1001(a)(2) (False Statement or Representation to an Agency of the United States), and it does not set forth all facts known to law enforcement related to this investigation.

## RELEVANT STATUTE

7. To prove a violation of 18 U.S.C. § 1001(a)(2), the United States must show:

a. First, that the defendant made a statement or representation.

b. Second, that the statement or representation was false, fictitious, or fraudulent;

c. Third, that the statement or representation was material;

d. Fourth, that the defendant acted knowingly and willfully; and

e. Fifth, that the statement or representation pertained to a matter within the jurisdiction of the executive, legislative, or judicial branch of the United States government.

**PROBABLE CAUSE**

8. On March 5, 2025, Agents with the FBI, DOL OIG and other law enforcement agencies including the Detroit Police Department, executed multiple federal search warrants in the Metro Detroit area in support of a federal investigation involving unemployment insurance fraud and bribery. One of the search warrants authorized the search of a residence at XXXXX Turner Street, Detroit, Michigan, 48221 (the "Turner Street Location"). The execution of the search warrant was scheduled for 4:00 AM due to the work schedule of C.B., a subject of the federal investigation and resident of that location.

9. The search warrant was executed on the scheduled date and time. Agents who took part in the operation reported that lights at the Turner Street Location were on and individuals inside the residence were awake and moving around prior to the execution of the warrant.

10. On March 6, 2025, FBI Agents discovered the following messages on C.B.'s publicly viewable Facebook page that were posted on March 5, 2025, shortly before the execution of the search warrant (all times are in Eastern Standard Time):

> 3:41 AM: I'm setting up traps now so if anyone comes in this house unannounced
> that's on them (three laughing emojis)
>
> 3:42 AM: I'm up I'll be waiting (three laughing emojis)

3:45 AM: Let me call off now. Lawyer bail money and disconnect all the power before it's to late I'm going to stand my ground (three laughing emojis)

3:46 AM: 45 minutes and ticking. (laughing emoji)

3:49 AM: Move everything now you have 41 minutes everyone. Not sure all the locations but dance now.

11. FBI Agents examined a cell phone belonging to C.B.C.B. that was seized pursuant to the above-mentioned search warrant. Examination of the phone revealed a Facebook Messenger exchange with an individual with a display name of "Rel Smith" (Smith) beginning at 3:36 AM (Eastern Standard Time):

C.B.: They bout to raid my house at 4:30 bro

Smith: N***a why???

C.B.: (three smiling emojis) I got connections there too

Smith: Leave (two laughing emojis)

C.B.: Idk probably someone called about that video

Smith: Omg

C.B.: He a sex trafficking (three smiling emojis)

Smith: I told you not to share that (14 laughing emojis, one "100" emoji)

C.B.: I'm setting traps now so they can hurt themselves

Smith: (five facepalm emojis) they gon check your phone too if they ever get it (seven laughing emojis)

C.B.: (three smiling emojis)
Fuck them oil over the door

Ice on the steps I'm gonna make sure they hurt themselves

Smith: So they bouta charge you with some shit?

C.B.: Nope can't probably looking for girls

Hell they need to look in there own ranks I got them there too

12. I believe that based on the content of the above posts found on C.B.'s Facebook page and the private messaging conversation C.B. had with Smith—all of which occurred just prior to execution of the search warrant on the Turner Street Location—C.B. was aware of the impending search warrant.

13. Information obtained from the Detroit Police Department (DPD) revealed that on March 5, 2025, at 3:10 AM, a DPD-initiated "call for service" was entered into the DPD dispatching system for the execution of the search warrant at the Turner Street Location. A "call for service" is a DPD dispatch requesting the police units respond to a particular location. In this instance, the "call for service" was created so that DPD could provide a marked police car in support of execution of the federal search warrant at the Turner Street Location.

14. Records produced by T-Mobile in response to a federal grand jury subpoena revealed that at 3:13 AM, approximately three minutes after the creation of the call for service in the DPD dispatch system, a phone call lasting 30 seconds

in duration was made from telephone number 313-492-4260 (subscribed to by STEPHANIE STEEN) to telephone number 313-342-7858.

15. Through multiple sources, agents have learned that STEEN's mother C.S. uses the telephone number 313-342-7858, despite the number being subscribed to another relative.

16. STEEN is the sister of C.B., and C.S. is the mother of both STEEN and C.B. C.S. also resided at the Turner Street Location with C.B. on the date of the execution of the search warrant.

17. STEEN was a dispatcher and lieutenant for the Detroit Fire Department (DFD). DFD and DPD share the same dispatching center, located at the Detroit Public Safety Headquarters (DPSH). According to information obtained from a reliable DFD employee with personal knowledge of STEEN's role and responsibilities within the dispatching center ("DFD source"), STEEN worked her assigned shift from approximately 6:00 PM on March 4, 2025, until approximately 6:00 AM on March 5, 2025.

18. Additional DPD records revealed that at approximately 3:17 AM, approximately seven minutes after the creation of the call for service in the DPD dispatch system, STEEN's unique username was used to view the call for service related to the execution of the search warrant at the Turner Street Location. According to records from T-Mobile, at approximately 3:17 AM, STEEN placed a

second call to C.S. This call lasted approximately two minutes and 59 seconds. At approximately 3:21 AM, STEEN placed a third call to C.S., which lasted approximately 62 seconds.

19. At approximately 3:36 AM, C.B. began his Facebook Messenger conversation with Rel Smith, referenced above, in which he stated that he knew of an imminent "raid" (i.e., law enforcement search) of his home.

20. At approximately 3:41 AM, STEEN placed a fourth call to C.S., which lasted approximately four seconds. This is also approximately the time that C.B. began posting messages on his Facebook page, as referenced above.

21. At approximately 3:43 AM, C.B. placed a call to C.S., which lasted approximately five seconds. C.B. and C.S. are believed to have been in the residence on Turner Street at the time of this call.

22. At approximately 3:50 AM, C.B. called the United Auto Workers (UAW) Call-In Absence line. This call lasted approximately seven minutes and 10 seconds. C.B. was known to be an employee of Stellantis in Warren, Michigan, where the UAW has a presence as a labor union.

23. At approximately 4:00 AM, STEEN placed a fifth call to C.S., at approximately the same time that the search warrant for the Turner Street Location was executed. It is unclear whether this call went through.

24. Apple Inc. produced information in response to a federal grand jury subpoena revealing that STEEN and C.S. were users of Apple iPhone mobile phones. Information from Apple also revealed that both STEEN and C.S. had Apple iCloud accounts. iCloud accounts may contain information that is backed up from users' Apple iPhones, including text messages content, photographs, videos, device information, and other items.

25. On July 11, 2025, a search warrant authorizing the search of the Apple iCloud accounts belonging to STEEN and C.S. was issued by this Court and subsequently served to Apple. The information obtained from these accounts, produced by Apple, revealed several text message conversations between STEEN and C.S. The information also revealed that STEEN sent and received these text messages on March 5, 2025 using an iPhone 14 associated with the telephone number 313-492-4260. Records obtained from T-Mobile in response to a federal grand jury subpoena indicate that this telephone number was registered to STEEN from March 18, 2006, through at least October 24, 2025.

26. According to the information obtained from Apple, beginning at approximately 3:23 AM on March 5, 2025, STEEN and C.S. exchanged the following messages:

STEEN: It suppose to start at 430

C.S.: Ok

STEEN: They will probably do it at 5 in the morning
They probably come at 5 in the morning

C.S.: Do they knock the door down?

STEEN: Yes
Sit on the porch at 445

C.S.: Ok

STEEN: They looking for a young boy
Do everybody have they id

C.S.: Yes but they old

STEEN: So

C.S.: Ok

STEEN: Don't tell them I told you

C.S.: I told cj not 2

STEEN: Where is Anthony

C.S.: Sleep

STEEN: Tell them you sitting on the porch waiting on uber eats

C.S.: *[check mark emoji]*

STEEN: They run through the house with gun

C.S.: Ok

STEEN: Is it lights in there

STEEN: I'm on the way *[message sent at approximately 4:00 AM]*

The police will be there at 430

They outside

I'm going to call you an ambulance

27. On January 30, 2026, as part of a federal investigation into the search warrant leak, I conducted an interview of STEEN with the FBI. During the interview, STEEN claimed she did not know about the search warrant at C.B.'s residence until after she got off work that day. STEEN was admonished and told that it was a crime to lie to federal officers.

28. STEEN was shown a police dispatch document containing information regarding the call for service created on March 5, 2025, concerning the search warrant at C.B.'s residence, which showed STEEN's sign on name "STEENS121" in the log at the bottom of the page at 3:17AM, and the following exchange occurred:

Agent: Is that your login there? S...Steen S

STEEN: No it's other people there with that name.

Agent: With the last name of Steen?

STEEN: Yes sir.

Agent: That's not you?

STEEN: No sir it's not.

Agent: Okay who else there…

STEEN: I mean, I don't know. I don't know who else is there. I mean, I know like, when you. I know it's other people there.

Agent: Other people named...

STEEN: Steen.

Agent: Named Steen, that, that would have access to dispatch...

STEEN: Yes.

Agent: To calls for service...

STEEN: Yes.

Agent: That can look into the system?

STEEN: Yes.

29. When asked if STEENS121 was her username, she replied "no", and when further questioned regarding what her username was, she stated that she was out on medical leave for back issues and other things.

30. STEEN was shown text messages between her and her mother, at which time STEEN stated her mother was elderly and it would be dangerous for anything to happen to her.

31. Agents confronted STEEN about knowing about the search warrant, at which time she stated, "I don't remember anything back in March." When further confronted, STEEN stated, "nothing interfered with anything because you guys got…..nothing interfered."

32. Agents discussed the severity of disclosing law enforcement sensitive information prior to the execution of a search warrant. STEEN stated, “I did not disclose any sensitive information.”

33. On February 3, 2026, an FBI Task Force Officer with the Detroit Police Department Internal Affairs confirmed STEENS121 was assigned to STEEN and usernames are generated by the employees’ last name and last three digits in their pension number, which is a uniquely assigned identifier number.

34. Furthermore, on February 9, 2026, DPD Special Investigations confirmed no personnel assigned to the Communications Division or any other division within the DFD carry the surnames “Steen”, “STEIN” or “Stein”, with the sole exception of Lieutenant Stephanie Steen.

35. On February 18, 2026, Agents obtained confirmation from an FBI Task Force Officer with the Detroit Police Department Internal Affairs that Stephanie Steen was assigned login name “STEENS121” and email address STEENS121@detroitmi.gov. Additionally, Agents obtained information that STEEN was hired on January 29, 2001 and her login name would have been assigned at that time.

36. Based on evidence I described above - including DPD dispatch logs showing STEEN’s username reviewing the dispatch request to assist with the search warrant for C.B.’s residence that morning at 3:17AM, prior to the search

warrant and while she was working at DFD, as well as her numerous text messages and calls that followed - I respectfully submit that there is probable cause to believe that STEEN was lying when (1) she denied that STEENS121 was her login name, and (2) claimed, in sum and substance, that she did not know about the search warrant until after she got off work.

**CONCLUSION**

37. Based on the foregoing, I request that the Court issue the proposed criminal complaint and arrest warrant.

Respectfully submitted,

Elizabeth Weitzel, Special Agent
U.S. Department of Labor - OIG

Sworn to before me and signed in my
presence and/or by reliable electronic means.

HON. DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

September 28, 2026